IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2022 Session

JACK BREITHAUPT, ET AL. V. VANDERBILT UNIVERSITY MEDICAL
CENTER

Appeal from the Circuit Court for Davidson County
No. 20C831   Kelvin D. Jones, Judge

———————————————————

No. M2021-00314-COA-R3-CV

———————————————————

This appeal is a health care liability case involving issues of pre-suit notice and the statutory requirements under Tennessee Code Annotated section 29-26-121.  The trial court denied the plaintiff's motion for partial summary judgment; granted the defendant's motion for summary judgment; and dismissed the plaintiff's claims with prejudice after determining she failed to give the defendant pre-suit notice in compliance with Tennessee Code Annotated section 29-26-121.  The plaintiff appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY W. ARMSTRONG, J., joined.

Benjamin K. Dean, Springfield, Tennessee, for the appellants, Jack Breithaupt and Estate of Rachael Breithaupt.

Steven E. Anderson and Ashley Tipton, Nashville, Tennessee, for the appellee, Vanderbilt University Medical Center.

**OPINION**

**I.     FACTS & PROCEDURAL HISTORY**

In January 2018, Ms. Rachael Breithaupt underwent several procedures on her left ankle, which were performed by an orthopedic surgeon at Vanderbilt University Medical Center ("VUMC").  By June 2018, Ms. Breithaupt had undergone physical therapy and was reportedly doing extremely well.  Ms. Breithaupt was then diagnosed with pneumonia in September 2018 by her primary care physician and pulmonologist.  Following her

diagnosis, Ms. Breithaupt underwent a referral and consultation in October 2018 with Dr. Karen Bloch, who was an infectious disease doctor at VUMC. Sputum cultures for fungal organisms were taken because of concerns about possible mold exposure affecting her pulmonary condition.

In November 2018, Dr. Bloch contacted Ms. Breithaupt advising her of the status of the fungal cultures. During their conversation, Dr. Bloch heard Ms. Breithaupt coughing and stated that she was going to call in a prescription for her. Dr. Bloch prescribed Ms. Breithaupt the drug known as Levofloxacin, which is generic for Levaquin. Levofloxacin has a risk of causing antibiotic tendonitis and is contraindicated with steroid therapy. Dr. Bloch did not discuss or inform Ms. Breithaupt of any risks or complications associated with or presented by the drug. At the time Dr. Bloch prescribed Levofloxacin, Ms. Breithaupt was taking a 10-mg dosage of Prednisone (steroid) twice per day due to chronic hypersensitivity pneumonitis, which was more than her normal prescription of 5-mg once per day. Ms. Breithaupt had been taking Prednisone since 1999 due to her chronic pulmonary issues. After five days of taking Levofloxacin, Ms. Breithaupt's left foot began to swell and was painful when she walked. As a result, she called her orthopedic surgeon's office and made an appointment for December 2018. Not being apprised of the danger of taking Levofloxacin, Ms. Breithaupt continued taking the drug over the next five days. On November 15, 2018, she ceased taking Levofloxacin having taken the entire prescription. On December 12, 2018, Ms. Breithaupt visited VUMC where her orthopedic surgeon informed her that she suspected Ms. Breithaupt was suffering from antibiotic tendonitis due to the Levofloxacin prescribed by Dr. Bloch. In January 2019, Ms. Breithaupt was diagnosed with a traumatic rupture to the left posterior tibial tendon and marked chronic Achilles tendinosis.

Afterward, Ms. Breithaupt contacted a longtime friend and Louisiana attorney, Dean Mosely, about pursuing a medical malpractice claim against VUMC. Although he was not a medical malpractice lawyer, Mr. Mosely thought that Ms. Breithaupt's case had merit. Mr. Mosely made attempts to consult with several Tennessee attorneys on Ms. Breithaupt's behalf. He was unable to secure a Tennessee attorney to handle her case and informed Ms. Breithaupt of the eight Tennessee attorneys he had contacted. However, he did email her a sample pre-suit notice form provided to him by a Tennessee attorney and informed her of the impending statute of limitations. On December 11, 2019, Mr. and Ms. Breithaupt, acting pro se, mailed three pre-suit notices. In December 2019, the addresses for VUMC were:

1. **Registered Agent**
   National Registered Agents, Inc.
   300 Montvue Road
   Knoxville, TN 37919-5546

2. **Principal Office**

1161 21st Avenue S.
STE D3300MCN
Nashville, TN 37232-5545

3. **Mailing Address**
2525 West End Ave.
STE 700
Nashville, TN 37203-1790

Ms. Sandra Bledsoe, who was VUMC's Vice President of Risk and Insurance Management, stated that there was not a pre-suit notice sent by Ms. Breithaupt to VUMC at any of those addresses. Instead, according to her notice letter,[1] Ms. Breithaupt addressed and directed her pre-suit notices to:

1. Vanderbilt University Medical Center
800 Gay Street
Suite 2021
Knoxville, TN 37929-9710

2. Vanderbilt University
1211 Medical Center Drive
Nashville, TN 37232

3. Vanderbilt University d/b/a Vanderbilt University Medical Center
305 Kirkland Hall
Nashville, TN 37240-0001

The first pre-suit notice was returned as "not deliverable as addressed" because it was mailed to the old address for VUMC's registered agent. VUMC allegedly never received the second pre-suit notice, which was addressed to Vanderbilt University—a separate and distinct legal entity from VUMC.[2]

---

[1] The addresses listed below do not exactly match the addresses contained in the mailings and the affidavit filed later in this case. However, there is no issue with these discrepancies or potential typographical errors, which ultimately had no effect on the delivery of the pre-suit notices to the addresses that they were directed to.

[2] VUMC does not dispute that 1211 Medical Center Drive is one of many addresses for VUMC. Additionally, Ms. Breithaupt's medical records list this address on the headings of her records. However, Ms. Bledsoe stated that the address was for the main adult hospital and was an insufficient address to get correspondence to the right place. She explained that things could get lost that went to that address because it was not specific enough for the mailroom to know where to route it. Moreover, Ms. Bledsoe noted that the second pre-suit notice was addressed to "Vanderbilt University," which did not have a presence at 1211 Medical Center Drive at the time. Vanderbilt University and VUMC have been separate and distinct legal entities since April 2016.

Vanderbilt University received the third pre-suit notice, which it then forwarded to VUMC's Department of Risk and Insurance Management. After receiving this pre-suit notice, Ms. Bledsoe admitted that she was aware that Ms. Breithaupt was going to potentially assert a claim against VUMC and Dr. Bloch. Therefore, she contacted and alerted Dr. Bloch after receiving the pre-suit notice. According to the audit trail,[3] Dr. Bloch then accessed and reviewed Ms. Breithaupt's medical records on January 14 and January 20, 2020. Ms. Bledsoe also accessed Ms. Breithaupt's medical records in February 2020. In addition to Dr. Bloch and Ms. Bledsoe, personnel from VUMC's Department of Quality, Safety, and Risk Prevention accessed Ms. Breithaupt's medical records as well. Ms. Bledsoe admitted that this pre-suit notice ultimately arrived at the right place and the fact that this pre-suit notice was addressed to the wrong place did not prejudice her ability to perform her duties regarding Ms. Breithaupt's potential claim. She also admitted that occasionally correspondence was wrongly mailed to Vanderbilt University or VUMC after the two became separate entities and that this was not the first time that had happened. However, she maintained that she did not receive "direct notice" from Ms. Breithaupt because Vanderbilt University's general counsel forwarded it to her office.

In February 2020, Ms. Breithaupt retained her current counsel. On April 9, 2020, Ms. Breithaupt filed her complaint against VUMC, which was accompanied by the necessary certificate of good faith. VUMC filed an answer in June 2020.[4] In July 2020, VUMC filed a motion for summary judgment arguing that Ms. Breithaupt had failed to comply with Tennessee Code Annotated section 29-26-121 and, as a result, failed to file her lawsuit within the applicable statute of limitations. Ms. Breithaupt filed a response and the affidavits of herself, her husband, and Mr. Mosely. Mr. Jack Breithaupt's affidavit included the following:

1. The envelope mailed to Vanderbilt University Medical Center, at 800 Gay Street, Suite 2021, Knoxville, TN 37829, marked as "return to sender," "not deliverable as addressed," and "unable to forward";

2. Correspondence from USPS indicating that the pre-suit notice addressed to Vanderbilt University at 1211 Medical Center Drive, Nashville, TN 37232, was signed for by Rebecca Kirk;[5] and

---

[3] Ms. Bledsoe explained that the audit trail shows who accessed the record, the time of access, and what records the person accessed.

[4] VUMC did not file or assert any Rule 12.02(6) motion to dismiss the complaint in its answer or otherwise in a separate motion; however, VUMC included in its answer the defense of failure to comply with Tennessee Code Annotated section 29-26-121.

[5] The parties subsequently stipulated that Ms. Kirk was once an employee who worked in the mailroom at 1211 Medical Center Drive, which was the address for VUMC's main adult hospital. However, Ms. Kirk was not a VUMC employee in December 2019. Ms. Kirk retired from VUMC in 2018 and received her last paycheck in July 2018. The parties further stipulated that they do not know how or why the signature of Ms. Kirk appeared on the receipt card provided by the U.S. Postal Service for a date after

- 4 -

3. A return receipt card addressed to Vanderbilt University d/b/a Vanderbilt Univ. Medical Ctr. at 305 Kirkland Hall, Nashville TN 37240-0001, which was ultimately delivered to 2525 West End Ave, Suite 700, Nashville, TN 37203, and signed for by DeAnna Crawford.[6]

As a result of this new information, VUMC postponed the hearing on its motion for summary judgment and filed an amended memorandum in support of its motion for summary judgment. In December 2020, Ms. Breithaupt filed a motion for partial summary judgment arguing that VUMC had waived its Tennessee Code Annotated section 29-26-121 defense. VUMC then filed a response to Ms. Breithaupt's motion for partial summary judgment and a reply in support of its motion for summary judgment.

In February 2021, the trial court held a hearing on the parties' motions. On February 22, 2021, the trial court entered an order denying Ms. Breithaupt's motion for partial summary judgment and granting VUMC's motion for summary judgment. The trial court dismissed Ms. Breithaupt's claims with prejudice after determining that she failed to send VUMC pre-suit notice in compliance with Tennessee Code Annotated section 29-26-121.[7] Specifically, the trial court found that: (1) Ms. Breithaupt never mailed a pre-suit notice to VUMC's registered agent; (2) 1211 Medical Center Drive was not VUMC's current business address, so Ms. Breithaupt did not provide a pre-suit notice through the 1211 Medical Center Drive mailing; and (3) Vanderbilt University forwarding the 305 Kirkland Hall pre-suit notice to VUMC did not satisfy the obligation under Tennessee Code Annotated section 29-26-121. Thereafter, Ms. Breithaupt timely filed her notice of appeal in March 2021. After her appeal was filed, Ms. Breithaupt died and the trial court substituted Mr. Breithaupt as the surviving spouse and personal representative/administrator of the Estate of Rachael Breithaupt.[8]

## II.    ISSUES PRESENTED

Ms. Breithaupt presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court erred in denying summary judgment to Ms. Breithaupt on the issue of VUMC's waiver of its pre-suit notice defense; and

---

her retirement and last paycheck. Furthermore, Ms. Kirk did not believe the signature on the U.S. Postal Service receipt card to be hers.

[6] Ms. Crawford worked in Ms. Bledsoe's office as the lead administrative assistant for VUMC's Department of Risk and Insurance Management.

[7] On appeal, Ms. Breithaupt does not challenge the trial court's decision to dismiss "with prejudice."

[8] To avoid confusion, we continue to refer to the plaintiff in this appeal as Ms. Breithaupt with no disrespect intended.

2. Whether the trial court erred in granting summary judgment to VUMC on its pre-suit notice defense.

VUMC presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court properly denied Ms. Breithaupt's motion for partial summary judgment claiming VUMC waived its pre-suit notice defense given that (1) VUMC was not required to specifically plead Ms. Breithaupt's noncompliance with Tennessee Code Annotated section 29-26-121 in its answer and (2) VUMC appropriately filed a motion for summary judgment asserting its pre-suit notice defense since it filed evidence outside of the pleadings; and

2. Whether the trial court properly granted summary judgment to VUMC given that Ms. Breithaupt was not entitled to the 120-day extension of the statute of limitations because she failed to provide VUMC pre-suit notice as required by Tennessee Code Annotated section 29-26-121 because (1) her first pre-suit notice was returned undeliverable; (2) the second pre-suit notice was not directed to VUMC and/or was not delivered to VUMC's current business address; and (3) the third pre-suit notice was directed and delivered to an entirely separate and distinct corporation that forwarded the notice to VUMC.

For the following reasons, we affirm the trial court's decision.

### III. STANDARD OF REVIEW

This is a health care liability action, which is governed by the Tennessee Health Care Liability Act.[9] Tenn. Code Ann. §§ 29-26-101 to 29-26-122. "Health care liability action" is defined as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]" Tenn. Code Ann. § 29-26-101(a)(1). On appeal, "[w]e review a trial court's decision on a motion for summary judgment de novo without a presumption of correctness." *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 330 (Tenn. 2020) (citing *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015)). "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250 (citing *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013)). "Summary judgment is appropriate when the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[9] "The legislature amended Tenn. Code Ann. § 29-26-121 to replace the term 'medical malpractice' with 'health care liability' effective April 23, 2012." *Brown v. Samples*, No. E2013-00799-COA-R9-CV, 2014 WL 1713773, at *1 n.1 (Tenn. Ct. App. Apr. 29, 2014); *see* Act of April 23, 2012, ch. 798, 2012 Tenn. Pub. Acts.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Martin*, 600 S.W.3d at 330 (quoting Tenn. R. Civ. P. 56.04)).

## IV. DISCUSSION

### A. Waiver[10]

For her first issue, Ms. Breithaupt contends that VUMC waived its pre-suit notice defense. Specifically, she argues that VUMC waived this defense by failing to include a Rule 12.02 defense in its answer, by failing to file a Rule 12.02 motion to dismiss, and by failing to plead the pre-suit notice defense with specificity in its answer. VUMC argues that it appropriately filed a motion for summary judgment asserting its pre-suit notice defense and it was not required to specifically plead noncompliance with Tennessee Code Annotated section 29-26-121 in its answer.

This Court has addressed this exact issue in a previous decision and concluded that "the clear language of Tenn. R. Civ. P. 12.08 resolves this waiver issue." *Blankenship v. Anesthesiology Consultants Exch., P.C.*, 446 S.W.3d 757, 760 (Tenn. Ct. App. 2014). Tennessee Rule of Civil Procedure 12.08 provides:

> A party waives all defenses and objections which the party does not present either by motion as hereinbefore provided, or, if the party has made no motion, in the party's answer or reply, or any amendments thereto, (provided, however, the defenses enumerated in 12.02(2), (3), (4) and (5) shall not be raised by amendment), *except (1) that the defense of failure to state a claim upon which relief can be granted*, the defense of failure to join an indispensable party, the defense of lack of capacity, and the objection of failure to state a legal defense to a claim *may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits* . . . . The objection or defense, if made at the trial, shall be disposed of as provided in Rule 15 in the light of any evidence that may have been received.

---

[10] For this particular discussion, we note that the "pre-suit notice defense" is the assertion that a plaintiff has failed to comply with Tennessee Code Annotated section 29-26-121. We have explained that a motion asserting that the plaintiff failed to comply with Tennessee Code Annotated section 29-26-121 "is most properly considered as a Rule 12.02 motion for failure to state a claim upon which relief can be granted." *Blankenship v. Anesthesiology Consultants Exch., P.C.*, 446 S.W.3d 757, 759 (Tenn. Ct. App. 2014). A Rule 12.02 motion for failure to state a claim upon which relief can be granted is specifically enumerated as Rule 12.02(6). Therefore, the following terms used in our discussion are synonymous: (1) pre-suit notice defense; (2) Rule 12.02(6) defense; and (3) the defense of failure to state a claim upon which relief can be granted.

Tenn. R. Civ. P. 12.08 (emphasis added). In *Blankenship*, the defendant filed a motion for summary judgment alleging the plaintiff had failed to comply with the notice requirements of Tennessee Code Annotated section 29-26-121. *Blankenship*, 446 S.W.3d at 758. The plaintiff opposed the motion arguing that the defendant had waived the defense of failure to comply with Tennessee Code Annotated section 29-26-121 by not raising it in a timely manner. *Id.* Ultimately, the trial court granted the defendant's motion for summary judgment and the plaintiff appealed. *Id.* On appeal, we noted that the defendant filed a motion asserting that the plaintiff failed to comply with Tennessee Code Annotated section 29-26-121, which was "most properly considered as a Rule 12.02 motion for failure to state a claim upon which relief can be granted." *Id.* at 759. We further noted that the Tennessee Supreme Court has instructed that "[t]he proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29-26-121 and Tennessee Code Annotated section 29-26-122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss." *Id.* (quoting *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)).

Upon interpretation of Tennessee Rule of Civil Procedure 12, we found that "[p]ursuant to the plain and unambiguous language of Tenn. R. Civ. Pro. 12.08," a defendant may present "its defense of failure to state a claim upon which can be granted in a motion, in its answer, in an amendment to its answer, 'in a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits . . . .'" *Id.* at 760 (quoting Tenn. R. Civ. P. 12.08). As such, this Court concluded that the defendant did not waive the defense of failure to state a claim upon which relief can be granted, which was based upon the plaintiff's failure to comply with Tennessee Code Annotated section 29-26-121. *Id.* Likewise, because VUMC could have presented this defense even as late as "at the trial on the merits," we conclude that VUMC did not waive its defense of failure to state a claim upon which relief can be granted by failing to include it in its answer. Tenn. R. Civ. P. 12.08.

Furthermore, as *Blankenship* demonstrates, VUMC did not waive its defense by filing a motion for summary judgment instead of Rule 12.02 motion to dismiss. Tennessee Rule of Civil Procedure 12.02 states that "[i]f, on a motion . . . to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Tenn. R. Civ. P. 12.02. Our Supreme Court has explained that "Rule 12.02(6) is the proper vehicle for challenging a plaintiff's compliance with the pre-suit notice requirements of Section 121." *Martin*, 600 S.W.3d at 330 (citing *Myers*, 382 S.W.3d at 307). However, the Court further explained that "because the Defendants submitted matters outside the pleadings in support of their 12.02(6) motion, the motions 'shall be treated as [motions] for summary judgment . . . .'" *Id.* (quoting Tenn. R. Civ. P. 12.02). If VUMC would have filed a Rule 12.02 motion to dismiss for failure to state a claim upon which relief can be granted, its motion inevitably would have been converted into a motion for summary judgment because there were matters submitted

outside of the pleadings, e.g., the affidavit of Ms. Bledsoe. Therefore, we conclude that VUMC did not waive its defense by filing a motion for summary judgment instead of a Rule 12.02 motion to dismiss.

It follows then that VUMC was not required to plead the defense of failure to state a claim upon which relief can be granted with specificity in its answer because VUMC was not required to plead this defense in its answer at all. This is supported by Tennessee Rule Civil Procedure 12.08 because a Rule 12.02(6) defense may be presented as late as "at the trial on the merits," and this specific defense is not waived if not pleaded in an answer. *See Teague v. Kidd*, No. E2019-00330-COA-R3-CV, 2019 WL 4344842, at *3 (Tenn. Ct. App. Sept. 12, 2019) ("[S]ome defenses are waived if they are not asserted in a party's first responsive pleading[;]" however, "the defense of failure to state a claim upon which relief can be granted . . . may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits[.]" (quoting Tenn. R. Civ. P. 12.08)). As such, we conclude that VUMC did not waive its pre-suit notice defense.

## B. Tenn. Code Ann. § 29-26-121

For her second issue, Ms. Breithaupt contends that the trial court erred in granting VUMC's motion for summary judgment on its pre-suit notice defense. VUMC argues that the trial court properly granted summary judgment because Ms. Breithaupt failed to provide VUMC pre-suit notice as required by Tennessee Code Annotated section 29-26-121.

### i. Pre-Suit Notice

The Tennessee Supreme Court has explained that the pre-suit notice requirement in Tennessee Code Annotated section 29-26-21 is driven by public policy concerns:

> [T]he overarching purpose of the Tennessee Health Care Liability Act, codified at Tennessee Code Annotated section 29-26-101 to -122, is not purely procedural. The governance of health[ ]care liability actions is an area of mutual concern for the legislature and the judiciary. *See Williams v. SMZ Specialists, PC*, No. W2012-00740-COA-R9-CV, 2013 WL 1701843, at *9 (Tenn. Ct. App. Apr. 19, 2013) ("The overall statutory scheme, including the pre-lawsuit notice requirement in Section 29-26-121, is driven by the Legislature's substantive public policy concerns, and therefore cannot be described as purely procedural." (citing *Biscan v. Brown*, 160 S.W.3d 462, 474 (Tenn. 2005))).

*Willeford v. Klepper*, 597 S.W.3d 454, 467 (Tenn. 2020). Section 29-26-121 specifies the requirements for pre-suit notice in a health care liability action. The statute provides in part:

(a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability *shall* give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1) (emphasis added). "When pre-suit notice is given 'to a provider as provided in this section, the applicable statutes of limitation and repose shall be extended for a period of one hundred and twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.'" *Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014) (quoting Tenn. Code Ann. § 29-26-121(c)). "[T]he 'essence' of the pre-suit notice statute is to notify potential defendants 'of a [health care liability] claim before suit is filed.'" *Id.* at 519 (quoting *Myers*, 382 S.W.3d at 309).

In *Myers*, the Tennessee Supreme Court concluded that the section 29-26-121 requirement of pre-suit notice is "fundamental," "mandatory," and "not subject to satisfaction by substantial compliance." *Myers*, 382 S.W.3d at 309-10. The Court subsequently held that the statutory content requirements enumerated in Tennessee Code Annotated section 29-26-121(a)(2) "are directory and may be satisfied by substantial compliance." *Martin*, 600 S.W.3d at 331 (citing *Stevens ex rel. Stevens v. Hickman Comm. Health Care Servs., Inc.*, 418 S.W.3d 547, 555 (Tenn. 2013) (evaluating whether a plaintiff substantially complied with Section 121 (a)(2)(E)); *see also Arden v. Kozawa*, 466 S.W.3d 758, 762-64 (Tenn. 2015) (holding that the requirements of Section 121 (a)(3)(B) and (a)(4) may be satisfied through substantial compliance); *Thurmond*, 433 S.W.3d at 520 (holding that the affidavit requirement of Section 121(a)(3)(B) and (a)(4) may be satisfied by substantial compliance). However, "[p]re-suit notice under Tennessee Code Annotated section 29-26-121(a)(1) is [still] mandatory, not directory." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018) (citations omitted).

In *Runions*, the Tennessee Supreme Court considered "whether a plaintiff complies with the mandatory pre-suit notice provision of Tennessee Code Annotated section 29-26-121(a)(1) when the plaintiff does not give written notice of a claim to a health care provider, but that provider learns of the claim through pre-suit notice given to a different potential defendant . . . ." *Runions*, 549 S.W.3d at 87. The Tennessee Supreme Court reasoned that it could not "read the statute to authorize indirect notice—that is, written notice of the claim directed to a potential defendant that another health care provider receives and even, as here, acknowledges receiving." *Id.* "Under the language of Tennessee Code Annotated section 29-26-121(a)(1), the proper inquiry is whether the plaintiff *gave* pre-suit notice to the health care provider to be named a defendant, not whether the health care provider knew about the claim based on pre-suit notice of the claim to another potential defendant." *Id.* Thus, our Supreme Court concluded that

a plaintiff does not comply with the mandatory pre-suit notice provision of Tennessee Code Annotated section 29-26-121(a)(1) when the plaintiff does not give written pre-suit notice to a health care provider that will be named a defendant—even though that health care provider has knowledge of the claim based on pre-suit notice the plaintiff sent to another potential defendant.

*Id.*

In the case at bar, Ms. Breithaupt mailed pre-suit notices to three different addresses. However, only one pre-suit notice was delivered to the "responsible party"—VUMC's Department of Risk and Insurance Management—which arrived at their office indirectly. *Arden*, 466 S.W.3d at 766 (quoting *Hearing on S.B. 2109 Before the Senate Judiciary Comm.*, 106th Gen. Assemb., Reg. Sess. (Tenn. May 27, 2009) (statement of Sen. Overbey)). The first pre-suit notice was addressed to Vanderbilt University Medical Center at 800 Gay Street, Suite 2021, Knoxville, TN 37929. The second pre-suit notice was addressed to Vanderbilt University at 1211 Medical Center Drive, Nashville, TN 37212. The third pre-suit notice was addressed to Vanderbilt University d/b/a Vanderbilt University Medical Center at 305 Kirkland Hall, Nashville, TN 37240-0001. Ms. Breithaupt conceded that the first pre-suit notice was returned as "not deliverable as addressed" because it was sent to VUMC's prior registered agent. Thus, we only have to consider whether Ms. Breithaupt complied with Tennessee Code Annotated section 29-26-121 through her second and third pre-suit notice.

VUMC allegedly never received the second pre-suit notice, which was addressed to Vanderbilt University—a separate and distinct legal entity from VUMC. However, this pre-suit notice was signed for by a former employee who worked in the mailroom at 1211 Medical Center Drive. While this pre-suit notice was addressed to "Vanderbilt University," it was mailed to the address for VUMC's main adult hospital at "1211 Medical Center Drive." However, the Tennessee Supreme Court has held that Tennessee Code Annotated section 29-26-121(a)(1) "does not authorize pre-suit notice to be sent to the facility" where the plaintiff received treatment. *Runions*, 549 S.W.3d at 89. Rather, it "must be sent to both the address for the agent for service of process and the health care provider's business address, if different from that of the agent for service of process." *Id.* (citing Tenn. Code Ann. § 29-26-121(a)(3)(B)(ii)).

Vanderbilt University—which, we reiterate, was a separate and distinct legal entity—received the third pre-suit notice and then forwarded it to VUMC's Department of Risk and Insurance Management. After receiving this pre-suit notice, Ms. Bledsoe admitted that she was aware that Ms. Breithaupt was going to potentially assert a claim against VUMC and Dr. Bloch. Ms. Bledsoe further admitted that this pre-suit notice ultimately arrived at the right place and the fact that this pre-suit notice was addressed to the wrong place did not prejudice her ability to perform her duties regarding Ms.

- 11 -

Breithaupt's potential claim. Nevertheless, she maintained that she did not receive "direct notice" from Ms. Breithaupt because Vanderbilt University's general counsel forwarded it to her office.

Pre-suit notice under Tennessee Code Annotated section 29-26-121(a)(1) is mandatory, and our courts require strict compliance with this provision. *Webb v. Trevecca Ctr. for Rehabilitation & Healing, LLC*, No. M2019-01300-COA-R3-CV, 2020 WL 6581837, at \*2 (Tenn. Ct. App. Nov. 10, 2020) (citing *Runions*, 549 S.W.3d at 86). "To satisfy the pre-suit notice requirement, 'the plaintiff must communicate in writing *directed to the potential defendant* about the claim.'" *Id.* (citing *Runions*, 549 S.W.3d at 87 (emphasis added)). In our case, the second and third pre-suit notices were directed to "Vanderbilt University." Ms. Breithaupt asserts that actual notice had been provided and completed by these two pre-suit notices. However, VUMC's "actual or constructive knowledge is not our concern." *Id.* (citing *Runions*, 549 S.W.3d at 88-89); *see Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582, 593 (Tenn. Ct. App. 2013) (explaining that Tennessee Code Annotated section 29-26-121 does not involve an actual or constructive notice analysis, but it requires an analysis into whether the plaintiff complied with the requirements of pre-suit notice as set forth in the pre-suit notice statute). As stated before, "[w]hen the disputed issue is whether the plaintiff provided pre-suit notice at all, 'the proper inquiry is whether the plaintiff *gave* pre-suit notice to the health care provider to be named a defendant, not whether the health care provider knew about the claim [from another source].'" *Id.* (quoting *Runions*, 549 S.W.3d at 87).

This Court has previously dealt with the issue of a plaintiff sending pre-suit notice to the wrong person in a health care liability action. *Id.*; *see Shockley*, 429 S.W.3d at 590 (noting that the plaintiff sent pre-suit notice to an entity that was neither a health care provider nor a proper defendant). In *Webb*, we held as follows:

> Substantial compliance with the service requirement in Tennessee Code Annotated § 29-26-121(a)(3)(B)(ii) cannot substitute for providing pre-suit notice to the proper defendant. As our supreme court explained, "Implicit in [the statutory] language is that a plaintiff must direct the notice to the health care provider and not to some other person or entity." *Runions*, 549 S.W.3d at 89. Notice directed to the wrong person or entity is ineffective. *Shockley*, 429 S.W.3d at 590.

*Id.* In another case similar to the one at bar, the plaintiff provided notice "to the wrong party, i.e., the Foundation rather than the Cooperative." *Shockley*, 429 S.W.3d at 590. We reiterated that "the statutory requirement that any person asserting a health care liability claim 'shall' give defendant 60-day pre-suit notice of the claim was mandatory, not directory, and therefore, strict, rather than substantial compliance with the notice statute, was required in order to maintain a medical malpractice action." *Id.* (citing *Myers*, 382 S.W.3d at 309). We stated that "[t]he language is clear and unambiguous and requires pre-

suit notice be sent to the provider that will be named a defendant," and "[i]t is axiomatic that the proper party be given pre-suit notice under 29-26-121(a)(1)." *Id.*

Although VUMC may have obtained indirect notice, "we must strictly construe the statute." *Petty v. Robert Burns MD PC*, No. W2019-00625-COA-R3-CV, 2020 WL 1064847, at *5 (Tenn. Ct. App. Mar. 5, 2020). As such, because the second and third pre-suit notices were wrongly addressed and/or directed to the wrong entity and strict compliance with the pre-suit notice statute is required, we conclude that Ms. Breithaupt failed to provide pre-suit notice to VUMC in compliance with Tennessee Code Annotated section 29-26-121(a)(1).

### ii. Extraordinary Cause

Ms. Breithaupt argues that she has demonstrated extraordinary cause for her noncompliance with Tennessee Code Annotated section 29-26-121. In short, she argues that she was provided the sample notice form from a Tennessee attorney, was specifically advised to send the form to the addresses contained on the form, and she was acting pro se at the time. VUMC argues that these excuses do not constitute extraordinary cause.

In *Myers*, the Tennessee Supreme Court explained that "the trial court *may* consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance." *Myers*, 382 S.W.3d at 307 (emphasis added). The Court further explained that whether the plaintiff "has demonstrated extraordinary cause that would excuse compliance with the statutes is a mixed question of law and fact, and our review of that determination is de novo with a presumption of correctness applying only to the trial court's findings of fact and not to the legal effect of those findings." *Id.* at 307-08 (citing *Starr v. Hill*, 353 S.W.3d 478, 481-82 (Tenn. 2011)). The Court expounded the standard of review as follows:

> We review the trial court's decision to excuse compliance under an abuse of discretion standard. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *Wilson v. State*, 367 S.W.3d 229, 235 (Tenn. 2012) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in flavor [sic] of the plaintiff. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

*Id.* at 308. The *Myers* Court defined "extraordinary" as "going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable." *Id.* at 310-11 (quoting *Webster's New World Dictionary of the American Language*, 516 (1966)). Additionally,

- 13 -

the Court opined that "extraordinary cause" might include "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary." *Id.* (quoting John A. Day, *Med Mal Makeover 2009 Act Improves on '08*; *The New Medical Malpractice Notice and Certificate of Good Faith Statutes*, Tenn. B.J. July 2009, at 17).

Ms. Breithaupt raised this argument in trial court, but the trial court chose not to consider this issue and did not reference "extraordinary cause" in its order. Although the trial court did not consider this issue, we will consider this issue on appeal to determine whether Ms. Breithaupt demonstrated extraordinary cause for her noncompliance. Ms. Breithaupt argues that she relied on information provided by an attorney in addressing her pre-suit notices and that she was acting pro se at the time when the pre-suit notices were addressed and mailed. We find that Ms. Breithaupt's contention that she relied on information provided by an attorney is not "extraordinary cause." We agree with VUMC's statement in its appellate brief that "[i]f that same attorney had represented [Ms. Breithaupt] and sent the pre-suit notices on [her] behalf, the attorney's failure to send the pre-suit notices to the correct legal entity at the statutorily mandated addresses would not equate to extraordinary cause." We have also held that the pro se argument is "unavailing" because "[t]he leniency we may afford to pleadings drafted by *pro se* litigants does not extend to excusing such litigants 'from complying with the same substantive and procedural rules that represented parties are expected to observe.'" *Mathes v. Lane*, No. E2013-01457-COA-R3-CV, 2014 WL 346676, at *7 (Tenn. Ct. App. Jan. 30, 2014) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)).

We also consider the fact that the third pre-suit notice ultimately arrived at the "right place." The pre-suit notice was signed for by an employee of VUMC's Department of Risk and Insurance Management after Vanderbilt University's general counsel forwarded the pre-suit notice to their office. Ms. Bledsoe admitted that the fact that this pre-suit notice was addressed to the wrong place did not prejudice her ability to perform her duties regarding Ms. Breithaupt's potential claim. Upon receiving this pre-suit notice from Vanderbilt University's general counsel, Ms. Bledsoe admitted that she was aware that Ms. Breithaupt was going to potentially assert a claim against VUMC and Dr. Bloch. She explained that she contacted and alerted Dr. Bloch after receiving the pre-suit notice. According to the audit trail, Dr. Bloch, Ms. Bledsoe, and personnel from VUMC's Department of Quality, Safety, and Risk Prevention accessed Ms. Breithaupt's medical records as a result of receiving this pre-suit notice. Ms. Bledsoe agreed that VUMC had personnel reviewing Ms. Breithaupt's medical records at that point and it was not for medical purposes.

Nevertheless, this case is not unique. In a previous case before this Court, we found that "there is no question that the [defendant] was aware that a potential health care liability claim might be asserted against it." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, No. W2016-00901-COA-R9-CV, 2017 WL 514583, at *6 (Tenn. Ct. App. Feb. 7, 2017)

- 14 -

*rev'd, Runions*, 549 S.W.3d at 79. We explained that "notwithstanding the fact that [the plaintiff's] pre-suit notice letters were not nominally directed to the [defendant], the [defendant] clearly had pre-suit notice." *Id.* We concluded that there was "clear and unambiguous proof that the [defendant] was on notice of a potential claim against it" because an employee of the defendant acknowledged that the plaintiff provided written notice of a potential claim against the defendant. *Id.* at *7. However, the Tennessee Supreme Court reversed our decision holding that "[t]he key consideration is whether, under Tennessee Code Annotated section 29-26-121(a)(1), [the plaintiff] gave written pre-suit notice to the [defendant]—not whether the [defendant] knew about the claim or whether it acknowledged that it had learned about the claim based on the pre-suit notice given to another potential defendant." *Runions*, 549 S.W.3d at 89. We conclude that the facts of this case are similar to those in *Runions* and do not rise to the level of "extraordinary." Therefore, we find that Ms. Breithaupt failed to demonstrate extraordinary cause for her noncompliance with Tennessee Code Annotated section 29-26-121.[11]

## V.   CONCLUSION

For the stated reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the appellants, Jack Breithaupt and Estate of Rachael Breithaupt, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[11] We recognize Ms. Breithaupt's frustration with the pre-suit notice requirements and the consequences the requirements may create. However, we are constrained by the plain language of the Tennessee Health Care Liability Act. *Shockley*, 429 S.W.3d at 595-96. Thus, "[w]e are not free to add language to the statute to create an exception for when a health care provider becomes aware of the claim through some means other than pre-suit notice given to it by the plaintiff." *Runions*, 549 S.W.3d at 87. "We also cannot vary the language of the statute to allow a plaintiff to avoid compliance with the pre-suit notice statute when she does not correctly identify the potential defendant." *Id.* (footnote omitted). This Court has a "general objective of disposing of cases on the merits." *Henry v. Goins*, 104 S.W.3d 475, 481 (Tenn. 2003). However, "[w]e do not substitute our judgment about policy matters for that of the Legislature." *Runions*, 549 S.W.3d at 88 (citing *BellSouth Telecomms., Inc. v. Greer*, 872 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).